IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DANTE D. GORDON**, | Case No. 5:13cv251 |
| Petitioner, | Judge Benita Y. Pearson |
| v. | Magistrate Judge James R. Knepp II |
| **NEIL TURNER**, | |
| Respondent. | Report and Recommendation |

### INTRODUCTION

*Pro se* Petitioner Dante D. Gordon, a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Neil Turner filed a Motion to Dismiss (Doc. 10), which Petitioner opposed (Doc. 16). Petitioner also filed motions to expand the record and for an evidentiary hearing. (Docs. 17, 23). Respondent filed motions in opposition (Docs. 20, 28), and Petitioner replied (Docs. 21, 29). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated August 2, 2013). For the reasons discussed below, Petitioner's Motion to Expand the Record is granted in part and denied in part, Petitioner's Motion for an Evidentiary Hearing is denied, and the undersigned recommends Respondent's Motion to Dismiss be granted.

### FACTUAL BACKGROUND

The relevant factual background and procedural history is summarized in Respondent's brief and incorporated herein as follows, with only minor edits. (Doc. 10).

*State Conviction*

Petitioner was indicted by the May, 1998 term of the Summit County, Ohio Grand Jury on one count of aggravated murder in violation of Ohio Revised Code § 2903.01(A), with a firearm specification. (Ex. 1, Doc. 10). Petitioner pled not guilty to the charges in the indictment. (Ex. 2, Doc. 10). Prior to trial, the State of Ohio amended count one of the indictment to the lesser included offense of murder. (Ex. 3, Doc. 10). Thereafter, Petitioner withdrew his not guilty plea and entered a plea of guilty to the charge of murder and the firearm specification. (Ex. 3, Doc. 10). On December 17, 1998, Petitioner was sentenced to a term of fifteen years to life for the murder conviction and to an additional three years for the firearm specification, to be served consecutively, for an aggregate term of eighteen years to life in prison. (Ex. 3, Doc. 10).

*Direct Appeal*

Petitioner did not file a timely appeal of his conviction and sentence, instead, on February 25, 2000, Petitioner filed a notice of appeal and motion for leave to file a delayed appeal to the Ninth District Court of Appeals, Summit County. (Ex. 4, Doc. 10). The state opposed the motion for leave. (Ex. 5, Doc. 10). On March 20, 2000, the court of appeals denied Petitioner's motion for leave and the appeal was dismissed as untimely. (Exs. 6, 9, Doc. 10). On April 3, 2000, Petitioner filed a motion for reconsideration. (Ex. 7, Doc. 10). The state opposed the motion. (Ex. 8, Doc. 10). On April 11, 2000, the court of appeals issued a journal entry denying the motion for reconsideration as untimely because it was three days late. (Ex. 9, Doc. 10).

On May 2, 2000, Petitioner filed a timely *pro se* notice of appeal to the Ohio Supreme Court (Case No. 2000-804). (Ex. 10, Doc. 10).[1] The Ohio Supreme Court issued an entry on July

---

1. Respondent avers that due to the Ohio Supreme Court's record retention rules, the file for Case No. 2000-804 is no longer available; however, the Docket Sheet to that case is attached as Exhibit 11.

19, 2000, declining jurisdiction to hear the case and dismissing the appeal as not involving any substantial constitutional question. (Ex. 12, Doc. 10).

***Motion to Withdraw Guilty Plea***

In the meantime, on June 4, 1999, Petitioner filed a *pro se* motion to withdraw his guilty plea under Criminal Rule 32.1. (Ex. 13, Doc. 10). The court denied the motion, after it was pending 40 days, on July 14, 1999. (Ex. 14, Doc. 10).

Petitioner then filed a *pro se* notice of appeal to the Ninth District Court of Appeals, Summit County, on August 18, 1999,  the 35th day after the decision he was appealing. (Ex. 15, Doc. 10). The state filed a motion to dismiss as untimely because it was not filed within the 30 days required by Ohio R. App. P. 4. (Ex. 16, Doc. 10). Petitioner responded to the state's motion to dismiss saying he had given the documents to the prison mail room in time but the documents were not mailed in time. (Ex. 17, Doc. 10). The court issued a journal entry on September 27, 1999, dismissing the appeal as untimely saying it had no jurisdiction to hear an untimely appeal. (Ex. 18, Doc. 10).

***Motion for New Sentencing***

On March 17, 2010, more than ten years after his most recent decision of July 14, 1999, Petitioner filed a *pro se* motion for new sentencing in the trial court. (Ex. 19, Doc. 10). Petitioner complained that his sentence was void and that there was no final appealable order. (*Id*.). The state opposed the motion. (Ex. 20, Doc. 10). The trial court summarily denied Petitioner's motion on April 1, 2010. (Ex. 21, Doc. 10).

On April 28, 2010, Petitioner filed a timely *pro se* notice of appeal to the Ninth District Court of Appeals, Summit County. (Ex. 22, Doc. 10). In his brief, he presented the following assignment of error:

3

> 1. The trial court committed reversible error when it denied Dante Gordon's Motion for New Sentencing when the judgment was clearly void under Ohio law.

(Ex. 23, Doc. 10, at 2). The state filed its brief on June 7, 2010. (Ex. 24, Doc. 10). Petitioner filed a reply brief. (Ex. 25, Doc. 10). The court of appeals issued a decision and journal entry on December 22, 2010, overruling Petitioner's sole assignment of error. (Ex. 26, Doc. 10).

Petitioner filed a timely *pro se* notice of appeal to the Ohio Supreme Court. (Ex. 27, Doc. 10). In his memorandum in support of jurisdiction, he presented the following propositions of law:

> 1. Pursuant to Crim. R. 32(C) the purpose of a judgment entry is to set forth a valid judgment of conviction correctly. When the judgment is incorrect, the court of appeals lacks subject matter jurisdiction to entertain a appeal. The 5th Amendment of Due Process is violated, the 14th Amendment Due Process and Equal Protection is violated.
>
> 2. O.R.C. 2967.28 is only for classified felonies, not for unclassified special felonies. When the judgment give a sentence that is contrary to law, the judgment and sentence are a nullity, the 5th Amendment due process is violated, the 14th Amendment Due Process and Equal Protection is violated.

(Ex. 28, Doc. 10, at 2). The state waived a response. (Ex. 29, Doc. 10). On April 6, 2011, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Ex. 30, Doc. 10).

### *Motion to Withdraw Guilty Plea, Motion to Dismiss Indictment, and Motion for Inspection of Grand Jury Transcripts*

On June 24, 2011, Petitioner filed a motion to withdraw his guilty plea. (Ex. 31, Doc. 10). The state opposed the motion. (Ex. 32, Doc. 10). Petitioner filed a response to the state's opposition. (Ex. 33, Doc. 10). Next, on March 7, 2011, Petitioner filed a motion to dismiss the indictment because it was defective and invalid. (Ex. 34, Doc. 10). Finally, on March 7, 2011, Petitioner filed a motion for inspection of the Grand Jury transcripts. (Ex. 35, Doc. 10). On

4

March 16, 2011, the state filed its memorandum opposing Petitioner's motion to dismiss the indictment and motion for Grand Jury transcripts. (Ex. 36, Doc. 10). Petitioner filed a reply to the state's opposition. (Ex. 37, Doc. 10). On April 8, 2011, the court of common pleas issued an order and findings of fact, denying each of Petitioner's motions. (Ex. 38, Doc. 10).

Petitioner then filed a timely *pro se* notice of appeal to the Ninth District Court of Appeals, Summit County on April 29, 2011. (Ex. 39, Doc. 10). In his brief, he presented the following assignments of error:

> 1. The Trial Court erred & abused its discretion when it refused to grant Appellant's Motion to Withdraw guilty plea where plea was not knowingly, intelligently, voluntarily made, it was coerced, induced by threats, promises counsel's erroneous advice, withholding exculpatory evidence and ineffective assistance of Counsel. As a result his 5th, 6th, and 14th Amendment rights to the U.S. Constitution was violated & Section 10 & 16 Article one of the Ohio Constitution.

> 2. The Trial Court erred when it denied the Appellant's Crim. R. 32.1 Motion to Withdraw his guilty plea without first conducting a hearing.

> 3. The Trial Court erred and abused its discretion when it denied Appellant's Motion to Dismiss bogus indictment without a hearing, where bogus indictment is clearly invalid and defective on its face. As result Appellants 5th, 6th & 14th Amendment right to the U.S. Constitution was violated & Section 10 & 16 Article one of the Ohio Constitution.

(Ex. 40, Doc.10, at 2). The state filed its brief on July 13, 2011. (Ex. 41, Doc. 10). Petitioner filed a reply brief. (Ex. 42, Doc. 10). The court of appeals issued a decision and journal entry on March 7, 2012, overruling each assignment of error and affirming the judgment of the trial court. (Ex. 43, Doc. 10).

On April 10, 2012, Petitioner filed a timely *pro se* notice of appeal to the Ohio Supreme Court. (Ex. 44, Doc. 10). In his brief, he presented the following propositions of law:

> 1. Pursuant to Crim. R. 32.1 a defendant may withdraw a guilty plea after the imposition of sentence only to correct manifest injustice. In post-sentence motion,

the burden of establishing the excistence of a manifest injustice is upon the individual seeking the withdraw the plea. A manifest injustice has been defined as a clear or openly unjust act. <u>State ex. Rel. Schneider v Kreinener</u> (1998), 83 Ohio St. 3d 203, 208, 1998 Ohio 271, 699 N.E.2d 83.

2. The Trial court lacked subject-matter Jurisdiction do to the alleged bogus indictment not being found in the manner as required by law inter alia, pursuant to crim.r.6(c) 6(f), 7(b), 2939.20, Section 10 article 1 of the Ohio constitution, the 5th amendment of the United State constitution. Moreover where no such direct indictment excist by legislation inter alia.

(Ex. 45, Doc. 10, at 2). The state waived its response. (Ex. 46, Doc. 10). On June 6, 2012, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Ex. 47, Doc. 10).

**Application for Reconsideration**

On March 21, 2012, Petitioner filed an application for reconsideration of the March 7, 2012 decision affirming the trial court's judgment dismissing his motion to withdraw the guilty plea. (Ex. 48, Doc. 10). The court issued a journal entry on May 10, 2012, denying Gordon's motion. (Ex. 49, Doc. 10).

**Second Delayed Appeal**

On April 6, 2012, Petitioner filed a *pro se* notice of appeal (Ex. 50, Doc. 10) and motion for leave to file a delayed appeal from the December 22, 1998 sentencing entry (Ex. 51, Doc. 10). He argued that he had been unaware of his appeal rights. (Ex. 51, Doc. 10). The state opposed the motion, saying his reasons were a fabrication and detailed all of his previous filings. (Ex. 52, Doc. 10). The court denied the motion for delayed appeal on April 26, 2012. (Ex. 53, Doc. 10).

Petitioner appealed to the Ohio Supreme Court on May 24, 2012. (Ex. 54, Doc. 10). In his memorandum in support of jurisdiction, Petitioner presented the following proposition of law:

> 1. Pursuant to criminal rule 32(B) it prescribes the trial court to inform a defendant of his appeal rights at which in the case subjudice the trial court mis-informed and did not inform Mr. Gordon of his appeal rights, and counsel for Mr. Gordon was ineffective for not only allowing the court to mis-inform and not inform Mr. Gordon of his appeal rights, but for not informing Mr. Gordon of his appeal rights. Thus violating 32(B) and Mr. Gordon's 14th amendment right to due process and equal protection of the laws along with his 6th amendment right to effective assistance of counsel inter alia.

(Ex. 55, Doc. 10). The state waived its memorandum in response. (Ex. 56, Doc. 10). On July 25, 2012, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Ex. 57, Doc. 10).

***Docket Sheets***

Respondent also provided docket sheets of the trial court and Summit County Court of Appeals for each of the appeals filed by Petitioner. The docket sheets are presented in Doc. 10 and designated as Exhibits 58 (trial court Case No. 1998-08-1896), 59 (CA Case No. 19744), 60 (CA Case No. 19984), 61 (CA Case No. 25370), 62 (CA Case No. 25911), and 63 (CA Case No. 26379). Actions in the Ohio Supreme Court are reflected in the court of appeals' docket sheets.

### FEDERAL HABEAS CORPUS

Petitioner, *pro se*, is now before this Court on a Petition filed on February 5, 2013, seeking a writ of habeas corpus pursuant to 28 U.S.C. Section 2254. He asserts the following grounds for relief:

> **GROUND ONE:** Petitioner was denied due process & equal protection of the laws under the 14th amendment and was denied effective assistance of counsel under the 6th amendment to the United states constitution. As a result Petitioner is actually innocent of Gregor Parnagian's murder & Petitioner plea was not

7

knowingly, intelligently & voluntarily made, thus void, in valid do to counsel withholding exculpatory evidence, lying about exculpatory evidence, failing to investigate the crime scene & put up a defense inter alia.

**GROUND TWO:** Petitioner due process & equal Protection of the law rights under the 14th amendment were violated when the trial court refused to conduct a evidentiary hearing.

**GROUND THREE:** Petitioner was denied his due process & equal protection rights under the 14th amendment, his 6th amendment right to effective assistance of counsel & his rights to be informed of the nature of the charge. Thus Petitioner's plea was not knowingly intelligently voluntarily made, it was induced by threats, coercion, promises, counsel's erroneous parole advice & counsel being under the influence of illegal drugs all while representing the Petitioner.

**GROUND FOUR:** Petitioner was denied due process & equal protection of the laws under the 14th amendment & the right to effective assistance of counsel under the 6th amendment to the United states Constitution, do to counsel failing to inform Petitioner of the constitutional rights he was waiving by pleading guilty when the trial court failed to do so, and for not addressing the issues to the court or on appeal. Thus Petitioner plea knowingly, intelligently, voluntarily made, it is void & invalid.

**GROUND FIVE:** Petitioner was denied due process & equal protection of the laws under the 14th amendment & the right to effective assistance of counsel under the 6th amendment do to counsel failing to inform Petitioner of the maximum penalty when the trial court failed to do so & for not addressing the issue on appeal. Thus Petitioner's plea was not knowingly, intelligently, voluntarily made thus void & invalid.

**GROUND SIX:** Petitioner was denied due process & equal protection of the laws under the 14th amendment & his right to effective assistance of counsel under the 6th amendment do to counsel not informing Petitioner of his appellate rights when the trial court failed to do so & when the trial court mis-informed Petitioner of his appellate rights. Thus Petitioner's guilty plea was not knowingly, intelligently, voluntarily made thus void & valid.

**GROUND SEVEN:** Petitioner was denied due process & protection of the laws, where the trial court had no subject matter jurisdiction to convict the Petitioner on a bogus direct indictment inter alia. Counsel was ineffective for not arguing the validity of the bogus direct indictment. Thus Petitioner's 6th, 14th amendment right to the United states constitution was violated.

**GROUND EIGHT:** Petitioner was denied due process & equal protection of the law, when the trial court did not inform him of his appellate rights & his

subsequent application for leave to file a delayed appeal was denied in violation
of the fourteenth amendment to the United states Constitution.

**GROUND NINE:** Petitioner has been denied effective assistance of counsel as
provided for by the sixth amendment of the United States consitution.

(Doc. 1, at 6, 32, 36, 40, 45, 49, 53, 58, 63).

MOTION TO EXPAND THE RECORD

In his Motion to Expand the Record, Petitioner seeks to admit a substantial amount of

evidence to support his claims that: 1) his guilty plea was not knowingly, intelligently, or

voluntary made; 2) he is entitled to equitable tolling in light of evidence he is actually innocent;

and 3) he is entitled to equitable tolling in light of evidence showing he has diligently pursued

his rights but was prevented from timely filing by an extraordinary circumstance. (Doc. 17, at 2);

*see*, *Lawrence v. Florida*, 549 U.S. 327 (2007); *Schlup v. Delo*, 513 U.S. 298 (1995). Petitioner

seeks to expand the record to include the following 104 Exhibits:

1. January 6, 1999 unsigned letter from Petitioner to Judge Jane Bond contending his
guilty plea was not voluntarily, knowingly, or intelligently made (Doc. 17-2, at 1);

2. May 20, 1999 letter dated from Petitioner's sister to Judge Bond explaining why the
January 6, 1999 letter was unsigned (Doc. 17-2, at 3);

3. June 2, 1999 letters from Petitioner's mother and sister in support of Petitioner's
motion to withdraw his guilty plea (Doc. 17-2, at 4);

4. June 4, 1999 Motion to Withdraw Guilty Plea, including affidavit of indigency,
memorandum in support, and July 14, 1999 judgment entry denying the motion (Doc. 17-
2, at 8);

5. June 23, 1999 letter from Petitioner to Judge Bond in support of his Motion to
Withdraw Guilty Plea (Doc. 17-2, at 18);

6. September 13, 1999 letter from Petitioner's sister detailing the circumstances before
Petitioner entered a guilty plea (Doc. 17-2, at 19);

7. Evidence concerning the time Petitioner mailed a delayed appeal response from prison and when he received prison mail, captioned to be filed in the Ninth District Court of Appeals on September 5, 1999 in response to a motion to dismiss (Doc. 17-2, at 21);

8. Five pages of the National Legal Professional Associates' case analysis (Doc. 17-2, at 24);

9. June 22, 2005 letter from Attorney Lawrence Whitney to Petitioner concluding the trial court was very "thorough" in entering Petitioner's guilty plea (Doc. 17-2, at 29);

10. August 18, 2005 letter from Mr. Whitney to Petitioner indicating he reviewed the prosecutor's file and found Petitioner's plea was constitutionally sound (Doc. 17-2, at 30);

11. September 2, 2006 letter from Petitioner to Mr. Whitney requesting the complete copy of his file (Doc. 17-2, at 32);

12. February 1, 2007, letter from Mr. Whitney asking whether Petitioner's file should be mailed to Attorney John Wolfe (Doc. 17-2, at 35);

13. February 12, 2007 letter from Mr. Whitney indicating he sent Petitioner the complete file (Doc. 17-2, at 36);

14. March 28, 2007 letter from Petitioner to the Akron Bar Association requesting to know the status of a previously filed grievance and March 30, 2007 response indicating no complaint was received (Doc. 17-2, at 37);

15. April 10, 2007 grievance filed against Lawrence Whitney, including Petitioner's January 2, 2007 affidavit (Doc. 17-2, at 38);

16. May 1, 2007 determination of the Akron Bar Association finding in favor of Mr. Whitney (Doc. 17-2, at 43);

17. December 27, 2004 letter from attorney Jana Deloach to the Akron Police Department seeking all public records relating to Dante Gordon and victim Gregory Parnagian from an incident on December 7, 1997 (Doc. 17-2, at 45);

18. February 5, 2005 letter from Ms. Deloach to Petitioner asking whether she would be retained (Doc. 17-2, at 47);

19. April 4, 2006 letter indicating Ms. Deloach would visit Petitioner (Doc. 17-2, at 48);

20. April 12, 2006 letter from Ms. Deloach saying she received copies of public records requests and postponing her visit to prison (Doc. 17-2, at 49);

21. April 1, 2006 letter from Ms. Deloach confirming she had been retained for post-conviction matters and requesting permission to visit the prison (Doc. 17-2, at 50);

22. January 1, 2011 newspaper article commenting on the "unlawful tactics & practices, abuses of power inter alia, by Ohio Prosecutors" (Doc. 17-2, at 51);

23. August 2013 newspaper article regarding Summit County prosecutorial misconduct (Doc. 17-2, at 52);

24. Exhibit List indicating Exhibits 25 through 66 were filed in the state courts (Doc. 17-2, at 53);

25. Notice of Alibi filed December 15, 1998 by Mr. Walker (Doc. 17-2, at 55);

26. February 3 (no year listed) affidavit of Thyron Burton (Doc. 17-2, at 56);

27. Undated newspaper article regarding the murder of another Dante Gordon (Doc. 17-2, at 57);

28. December 16, 1998 partial transcript of proceedings (Doc. 17-2, at 58);

29. December 16, 1998 partial transcript of proceedings (Doc. 17-2, at 59);

30. December 16, 1998 partial transcript of proceedings (Doc. 17-2, at 60);

31. December 16, 1998 partial transcript of proceedings (Doc. 17-3, at 1);

32. April 12, 2010 affidavits from Petitioner's sister (Doc. 17-3, at 2);

33. October 1, 2008 newspaper article detailing practice of bringing Petitioners to Court in orange jumpsuits (Doc. 17-3, at 5);

34. December 16, 1998 partial transcript of proceedings (Doc. 17-3, at 6);

35. December 16, 1998 partial transcript of proceedings (Doc. 17-3, at 7);

36. August 11, 1998 indictments, one unsigned (Doc. 17-3, at 9) and one signed (Doc. 17-3, at 8);

37. February 2008 newspaper article regarding bogus indictments handed out in Summit County (Doc. 17-3, at 10);

38. Undated newspaper article about Summit County prosecutors signing indictments (Doc. 17-3, at 11);

11

39. A lawyer's checklist for providing effective assistance of counsel (Doc. 17-3, at 13);

40. May 3, 2010 affidavit from Angela Hodges (Doc. 17-3, at 20);

41. Undated record request made by Angela Hodges and corresponding denial and reply letters (Doc. 17-3, at 22);

42. Untitled docket sheet (Doc. 17-3, at 28);

43. Retyped synopsis of witness statement from S. Arrington (Doc. 17-3, at 29);

44. Retyped synopsis of witness statement from B. Blair (Doc. 17-3, at 31);

45. Retyped synopsis of witness statement from Jessica Morgan (Doc. 17-3, at 32);

46. Retyped synopsis of witness statement from Jonna Morgan (Doc. 17-3, at 33);

47. Retyped synopsis of witness statement from Jessica Morgan (Doc. 17-3, at 34);

48. Retyped synopsis of witness statement from Larry Moore (Doc. 17-3, at 38);

49. Retyped synopsis of witness statement from Ronald Caldwell (Doc. 17-3, at 39);

50. Retyped synopsis of witness statement from Charles Gordon (Doc. 17-3, at 41);

51. December 7, 1997 report of investigation by Officer Hensley (Doc. 17-4, at 1);

52. December 7, 1997 report of investigation by Officer Schnee (Doc. 17-4, at 3);

53. December 7, 1997 unknown officer's report of investigation (Doc. 17-4, at 4);

54. December 8, 1997 report of investigation by Det. Pierre Irvine (Doc. 17-4, at 7);

55. December 8, 1997 report of investigation by Officer J.D. Currie (Doc. 17-4, at 9);

56. December 8, 1997 report of investigation by Det. N. J. Woodbury (Doc. 17-4, at 11);

57. December 8, 1997 report of investigation by Det. Michael L. Schumacher (Doc. 17-4, at 13);

58. December 10, 1997 report of investigation by Officer King (Doc. 17-4, at 15);

59. December 10, 1997 report of investigation by Officer King (Doc. 17-4, at 16);

60. December 12, 1997 report of investigation by Officer King (Doc. 17-4, at 19);

12

61. February 3, 1998 report of investigation by Det. R. McFarland and Sgt. L.J. White (Doc. 17-4, at 21);

62. October 12, 1998 report of investigation by Detective S. Geiger (Doc. 17-4, at 23);

63. Supplemental arrest report for Dante D. Gordon (Doc. 17-4, at 25);

64. December 7, 1997 police dispatch notes (Doc. 17-4, at 26);

65. December 8, 1997 report of investigation by Officers B. Shenise and M. Fox (Doc. 17-4, at 27);

66. Autopsy report for the body of Gregory Parnagian (Doc. 17-5, at 1) and May 8, 2008 newspaper article about lawyer Jon Sinn, who would not allow his client to plead guilty without seeing the autopsy report (Doc. 17-6, at 1);

67. Re-created crime diagram, ostensibly drawn by Petitioner (Doc. 17-6, at 2);

68. Newspaper articles concerning Attorney Donald Walker's conviction for cocaine possession and admission to fraud and smoking marijuana before and after court appearances for the past twenty years (Doc. 17-6, at 3) and articles on the effects of drug abuse (Doc. 17-6, at 5);

69. Newspaper article saying the victim was a burglary suspect (Doc. 17-6, at 7);

70. B.C.I. report indicating victim had gun powder residue on his hands (Doc. 17-6, at 8);

71. Newspaper article on the prosecutor Judith Bandy (Doc. 17-6, at 9);

72. May 16, 1999 newspaper article questioning aggressive pursuit of felony cases and questioning direct indictment program (Doc. 17-6, at 10);

73. August 20, 1998 journal entry of arraignment from Summit County Court of Common Pleas (Doc. 17-6, at 26), September 16, 1998 journal entry setting trial date (Doc. 17-6, at 27), and November 12, 1998 journal entry continuing trial (Doc. 17-6, at 28);

74. Crime scene photographs (Doc. 17-6, at 29);

75. April 8, 2010 affidavit of Lolita Quinn (Doc. 17-6, at 31) and photograph of Petitioner and his daughter (Doc. 17-6, at 32);

76. Petitioner's prison identification photograph (Doc. 17-6, at 33);

13

77. September 16, 1999 (Doc. 17-6, at 34) and July 6, 2009 (Doc. 17-6, at 35) letters to Mr. Walker from Petitioner requesting his case file;

78. Petitioner's synopsis of December 16, 1998 transcript (Doc. 17-6, at 36) and complete, file stamped transcript of December 16, 1998 proceeding held at the Court's request (Doc. 17-6, at 38);

79. November 30, 2008 newspaper article about an Akron police detective who faulted the prosecutor's handling of murder trials (Doc. 17-6, at 52);

80. Synopsis of Officer Lacy's police report (Doc. 17-7, at 1);

81. December 13, 1997 police report of Officer W. Lacy (Doc. 17-7, at 3);

82. One page out of a three page December 7, 1997 incident report (Doc. 17-7, at 5);

83. Copies of paid postage dated February 10, 2010 (Doc. 17-7, at 6);

84. Untitled docket sheet (Doc. 17-7, at 7);

85. May 27 (no year) affidavit from Petitioner in support of 32.1 Motion to Withdraw Guilty Plea (Doc. 17-7, at 11);

86. Description of "the other" Dante D. Gordon (Doc. 17-7, at 12);

87. Description of Petitioner (Doc. 17-7, at 13);

88. March 3, 1998 message to Chicago police Department from Sgt. J. Callahan (Doc. 17-7, at 14);

89. August 4, 1998 Field Arrest/Summons Form Arrest sheet (Doc. 17-7, at 15);

90. December 29, 2010 Warrant to Convey (Doc. 17-7, at 16);

91. Criminal history for "Dante Gordon" (Doc. 17-7, at 17);

92. Undated newspaper articles on allegations of prosecutorial misconduct against M. Callahan and Judith Bandy (Doc. 17-7, at 18);

93. Undated newspaper article on allegations of prosecutorial misconduct against M. Callahan and Judith Bandy (Doc. 17-7, at 20);

94. December 17, 1998 sentencing and plea transcripts (Doc. 17-7, at 22);

14

95. 2012 motion for appointment of counsel and affidavit in support of motion for delayed appeal (Doc. 17-8, at 1);

96. 2000 motion for appointment of counsel and request for transcripts at state expense for delayed appeal (Doc. 17-8, at 4);

97. August 20, 1998 journal entry of arraignment (Doc. 17-8, at 6);

98. September 16, 1998 journal entry setting trial date of November 12, 1998 (Doc. 17-8, at 7);

99. September 2, 1998 journal entry continuing pretrial (Doc. 17-8, at 8);

100. October 22, 1998 journal entry confirming trial date (Doc. 17-8, at 9);

101. November 12, 1998 journal entry continuing trial to December 17, 1998 (Doc. 17-8, at 10);

102. December 14, 1998 journal entry stating plea offer remains open until December 15, 1998 (Doc. 17-8, at 11);

103. December 22, 1998 journal entry of conviction and sentencing (Doc. 17-8, at 12);

104. December 30, 2013 affidavit of Petitioner about when he found out about his appellate rights (Doc. 17-8, at 14).

Respondent generally objects to the admission of all of evidence. (Doc. 20). First, Respondent contends the evidence offers no explanation for Petitioner neglecting to file a federal petition within the one-year statutory time period. (Doc. 20, at 4). Further, Respondent argues the evidence cannot rebut what was presented in Court because Petitioner pled guilty. (Doc. 20, at 5). To the extent the evidence is intended to challenge the voluntariness of the guilty plea, the Respondent contends it "falls short first because the documents . . . are documents that clearly were available during the time between June 4, 1999 and July 14, 1999 . . . or they pertained not to his guilty plea but the late filing of one of his then filed motions." (Doc. 20, at 5). Respondent adds, "[t]he documents he offers that are dated from June 22, 2005 and thereafter, the balance of

15

the documents offered, clearly are not relevant to whether his guilty plea was voluntary since they pertain to matters that occurred after that date." (Doc. 20, at 5).

Under Habeas Rule 7, "[i]f the petition is not dismissed, the Court may direct the parties to expand the record by submitting additional materials relating to the petition", Rules Governing § 2254 Cases, Rule 7, 28 U.S.C. foll. § 2254 (2010), but expansion of the record is not mandatory and "is left to the discretion of the trial judge". *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988), *cert. denied*, 488 U.S. 928 (1988). "[A]ny petition seeking relief under § 2254(d) – whether under subsection (d)(1) or (d)(2) – must rely solely on the evidence presented to the state courts." *Parker v. Warden*, 2013 U.S. Dist. LEXIS 47569 (N.D. Ohio); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1399-1400 (2011). Indeed, the Supreme Court found "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* at 1399. Therefore, because a federal habeas court's review is limited to the record in existence at the time of the state court adjudication, evidence introduced only in federal habeas proceedings is irrelevant.

Here, the pertinent issue is whether the Petition was timely filed, and if not, whether Petitioner is entitled to equitable tolling. Considering the discretionary expansion of the record standard, the volume of evidence Petitioner seeks to admit, and the Respondent's general objection to the admission of all evidence, the Court will consider whether the evidence was admitted in state court and whether it is relevant to the matter at hand in order to decide whether to admit the evidence. Fed. R. Evid. 401 (relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Portions of a composite exhibit will be denoted by citation to the record following the exhibit number.

<u>State Court Journal Entries, Orders, Docket Sheets, Exhibits, and Motions</u>

In his Motion to Expand the Record, Petitioner included a number of exhibits which are already admitted to this record (*See*, Exs. 10-13, 36, 58, 60, Doc. 10). Accordingly, Petitioner's Motion to Expand the Record is DENIED as moot with respect to Exhibits 4, 25, 36 (*only as to* Doc. 17-3, at 9), 42, 73, 84, and 95 to 103.

Exhibit 7 is Petitioner's response to the state's motion to dismiss his delayed appeal, which was ostensibly filed in state court (*See,* Ex. 59, Doc. 10) but is not yet admitted to this record. Thus, Petitioner's Motion is GRANTED as to Exhibit 7. Similarly, Petitioner's Motion is GRANTED as to Exhibit 90, which is a December 29, 2010 Warrant to Convey issued by the Summit County Court of Common Pleas.

<u>Newspaper Articles</u>

Petitioner seeks to admit into the record various articles, most of which were apparently filed in the state court. (*See*, Ex. 38, Doc. 10, at 2-3) ("The Defendant attached numerous exhibits to his motion to withdraw his plea including affidavits, pleadings, transcripts, reports, letters, pictures, checklists, online docket printouts, and newspaper articles. Exhibits A-KKK").

These articles generally address alleged prosecutorial misconduct (Exs. 22, 23, 71, 79, 92, 93); the murder of another Dante Gordon (Ex. 27); the practice of bringing defendants to court in orange jumpsuits (Ex. 33); the alleged practice of Summit County to issue bogus indictments with forged signatures or no signatures at all (Exs. 37, 38, 72); an article calling the victim a burglary suspect (Ex. 69); a defense attorney's "checklist" for representation (Ex. 39); an attorney's advice to wait for an autopsy report before pleading guilty (Ex. 66, Doc. 17-6, at 1); and Attorney Donald Walker's 2006 conviction for felony drug possession and admission to

fraud and smoking marijuana before and after court appearances for the past twenty years (Ex. 68).

Although they were likely filed in state court, the exhibits are irrelevant to the timeliness of the Petition. Fed. R. Evid. 401. Further, they do not support Petitioner's equitable tolling argument because they do not relate to whether he diligently pursued his rights and they are not the type of exculpatory, scientific, or trustworthy evidence to support a claim of actual innocence. *See*, *Lawrence*, 549 U.S. 327; *Schlup*, 513 U.S. 298 at 324, 327. Therefore, Petitioner's Motion to Expand the Record is DENIED as to Exhibits 22, 23, 27, 33, 37, 38, 39, 66 (*only as to* Doc. 17-6, at 1), 68, 69, 71, 72, 79, 92, and 93. The Court notes that any misconduct on the part of Petitioner's trial attorney, especially related to drug abuse, is irrelevant to the timeliness of the Petition and although considered as part of a claim of actual innocence, does not rise to the *Schlup* standard.

<u>Transcript of Proceedings – Plea & Sentencing</u>

Petitioner seeks to admit to the record Exhibit 94 (Doc. 17-7, at 22), which is a "Transcript of Proceedings – Plea & Sentencing" dated December 17, 1998. Respondent avers "[t]he transcript of [Petitioner's] Plea and Sentencing is not available since he did not file a timely appeal requesting it and his motion for delayed appeal was denied" (Doc. 10, at 9; *see also*, Doc. 20, at 3).

As Respondent later admits (Doc. 28, at 11), review of the record indicates this transcript was filed in state court with Petitioner's post-conviction motions. To this end, the transcript was transcribed according to the state court docket sheet for case number CR 98-08-1896 and is quoted and discussed in the decisions of the Summit County Court of Common Pleas and the Court of Appeals for the Ninth District. (Ex. 38, Doc. 10, at 4-5; Ex. 43, Doc. 10, at 6-7; Ex. 58,

non-document entry dated June 28, 1999). Although irrelevant to whether Petitioner timely filed the Petition, without a doubt, the transcript is highly relevant to Petitioner's claim he did not knowingly, voluntarily, and intelligently enter a guilty plea. Further, it is part of the state court record but is not yet part of this record. (*Id.*) Thus, the Court GRANTS Petitioner's Motion to Expand the Record with respect to Exhibit 94 (*only as to* Doc. 17-7, at 22).

Transcript of Proceedings – December 16, 1998

On December 16, 1998, Petitioner, represented by Mr. Walker, and prosecutor Jonathan T. Sinn met with Judge Bond to discuss trial (which was scheduled for the following day) and a possible plea deal. (Doc. 17, at 39-40). Although Petitioner alleges the document was filed in state court (Doc. 17-2, at 53), the proceeding was never docketed in case number CR 98-08-1896 (Ex. 58, Doc. 10). The transcript is somewhat relevant to the voluntary, intelligent, and knowing nature of Petitioner's guilty plea. However, it is not strong evidence in light of the December 17, 1998 transcript, which includes the colloquy between the judge and Petitioner before he entered a guilty plea. Further, it is irrelevant to Petitioner's ability to timely file the Petition. For these reasons, Petitioner's Motion to Expand the Record is DENIED with respect to the complete transcript, filed in Exhibit 78 (*only as to* Doc. 17-6, at 38).

For the same reasons, Petitioner's Motion is DENIED with respect to Exhibits 28 to 31, 34, and 35, which include partial transcripts of the December 16, 1998 proceeding and the remainder of Exhibit 78 (*only as to* Doc. 17-6, at 36-37), which is Petitioner's own account of what happened on December 16, 1998.

Unsigned Indictment

Petitioner's Motion is DENIED with respect to Exhibit 36 (*only as to* Doc. 17-3, at 8), which is an unsigned indictment. Even though the indictment may have been filed as an exhibit

in state court (Ex. 36, Doc. 10), it is not relevant to whether Petitioner timely filed his Petition for habeas corpus or to the issue of equitable tolling because a signed indictment was produced in state court.

Police Reports and Records, Witness Statements, and Autopsy Reports

After carefully reviewing and considering all exhibits submitted by Petitioner, the undersigned finds evidence which could be admitted in trial as part of Petitioner's defense, including police reports and witness statements (both the originals and the re-typed synopses), irrelevant to whether the Petition was timely filed. Fed. R. Evid. 401.

To the extent Petitioner argues inconsistencies between descriptions of his and the suspect's appearance supports equitable tolling or a claim of actual innocence, that argument is not well-taken as it is simply not the type of reliable evidence required to overcome a procedural bar to review. *Schlup*, 513, at 329 (in considering the actual innocence exception, the Court must consider whether new evidence shows "it is more likely than not that no reasonable juror would convict"). Accordingly, Petitioner's Motion to Expand the Record is DENIED with respect to Exhibits 43 to 65, 80 to 82, 88, and 89.

Similarly, crime scene photographs and both original and recreated autopsy reports are not relevant to the issue at hand. Petitioner argues that he could not have shot the victim from above because he is five inches shorter than the victim and notes the B.C.I. report shows the victim had gun powder on his hands but no burn marks at the point of bullet entry, which is inconsistent with a police report that the victim was shot at close range. (Doc. 1-1, at 6-8). This evidence, while relevant to a potential defense at trial, cannot surmount an equitable tolling hurdle. *Schlup*, 513, at 329. Accordingly, Petitioner's Motion is DENIED as to Exhibits 66 (*only as to* Doc. 17-5, at 1), 67, 70, and 74.

<u>Letters to Judge Bond</u>

Petitioner's Motion to Expand the Record is GRANTED as to Exhibits 2 and 3 because those exhibits were filed in state court according to the relevant docket sheet (Ex. 58, Doc. 10, at 3) but are not yet admitted to this record. Petitioner's Motion is DENIED with respect to Exhibit 1, because that exhibit was rejected in state court (*See*, Ex. 58, Doc. 10, at 3). Petitioner's Motion is DENIED with respect to Exhibits 5 and 6, which are letters in support of Petitioner's 1999 motion to withdraw guilty plea, because there is no evidence those letters were filed in state court and they are not relevant to the issue at hand (i.e. the timely filing of a habeas petition).

<u>Correspondence between Petitioner and his Attorneys</u>

Petitioner seeks to expand the record to include correspondence between him and his attorneys and between him and the Akron Bar Association in order to support his claims that he is entitled to equitable tolling. To this end, Petitioner argues ineffective assistance of counsel claiming, among other things, he did not have access to his file, he was not provided discovery, and he was misled to plead guilty. (Doc. 17-1, at 3; Doc. 1-1, at 3-6, 24). It is unclear whether these letters were filed in state court. However, with one exception, all of the letters are dated after 2004, well after the time to file a habeas petition expired. Thus, the letters do not support an argument that Petitioner could not file on time despite his diligent efforts or Petitioner's actual innocence.

Therefore, Petitioner's Motion with respect to Exhibits 9 to 21 and 77 (*only as to* Doc. 17-6, at 35) is DENIED. However his Motion with respect to Exhibit 77 (*only as to* Doc. 17-6, at 34) is GRANTED, because it is temporally relevant to an equitable tolling argument even though it is unclear whether it was filed in state court.

Affidavits

Petitioner seeks to admit the following affidavits:

Ex. 26: February 3 affidavit of Thyron Burton (his alleged alibi) (Doc. 17-2, at 56);

Ex. 32: April 12, 2010 affidavit from Petitioner's sister concerning the events on December 16 and 17, 1998 (Doc. 17-3, at 2);

Ex. 40: May 3, 2010 affidavit of Angela Hodges regarding public records requests (Doc. 17-3, at 20);

Ex. 75: April 8, 2010 affidavit of Lolita Quinn regarding photographs of Petitioner (Doc. 17-6, at 31);

Ex. 85: May 27 affidavit from Petitioner in support of Motion to Withdraw Guilty Plea (Doc. 17-7, at 11); and

Ex. 104: December 30, 2013 affidavit of Petitioner about when he learned of appellate rights (Doc. 17-8, at 14).

Petitioner's Motion to Expand the Record is GRANTED as to Exhibits 26, 40, 75 (*only as to* Doc. 17-6, at 31), and 104 because they relate to Petitioner's equitable tolling argument. His Motion is DENIED as to Exhibits 32 and 85 because the affidavits do not address the timeliness of the Petition and do not support equitable tolling.

National Legal Professional Associates' (NLPA) Case Analysis and Exhibit List

Petitioner's Motion is DENIED as to Exhibit 8 (the NLPA's case analysis) because the exhibit is incomplete and not relevant to the timeliness of the Petition. His motion is DENIED as to Exhibit 24 (the indexed exhibit list), because it is not necessary or relevant to the issue at hand.

Public Record Request Made by Angela Hodges

Petitioner's Motion is DENIED as to Exhibit 41 (the public record requests made by

22

Angela Hodges) because the record requests are undated, and therefore, cannot support the issue at hand or an equitable tolling argument. Similarly, copies of paid postage stamps that are unsecured to any document are not relevant and therefore, Petitioner's Motion with respect to Exhibit 83 is DENIED.

Photographs of Petitioner

Petitioner claims photographs showing he is not "chubby" and did not have a beard support a claim of actual innocence. (Doc. 17-1, at 11). However, the photographs are not the type of new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, previously not submitted at trial, which support an actual innocence argument. *Schlup*, 513 U.S., at 315-16. Accordingly, Petitioner's Motion with respect to Exhibits 75 (*only as to* Doc. 17-6, at 32) and 76 is DENIED.

"Dante Gordon"

Petitioner claims he has been confused with another Dante Gordon, who has a more lengthy criminal history. Petitioner claims he is only responsible for the latest entry in an online criminal history report run using the search term "Dante Gordon". (Doc. 17-1, at 13). However, the search and Petitioner's claims are not the type of new reliable evidence which support an actual innocence argument. *Schlup*, 513 U.S., at 315-16. Thus, Petitioner's Motion to Expand the Record to include Exhibit 91 is DENIED.

Similarly, prisoner description sheets for Dante Deon Gordon, which describes a man who is six feet tall, 209 pounds, age 25 and who Petitioner alleges to be the "other" Dante Gordon (Doc. 17-7, at 12), and for Dante Gordon, who is five feet nine inches tall, 150 pounds, and twenty years old (Doc. 17-7, at 13), are irrelevant to Petitioner's ability to timely file the

Petition. Moreover, the exhibits do not satisfy an equitable tolling standard, as further discussed below. Therefore, Petitioner's Motion with respect to Exhibits 86 and 87 is DENIED.

In sum, Petitioner's Motion to Expand the Record (Doc. 17) is GRANTED as to Exhibits 2, 3, 7, 26, 40, 75 (*only as to* Doc. 17-6, at 31), 77 (*only as to* Doc. 17-5, at 34), 90, 94, and 104 and DENIED as to Exhibits 1, 4-6, 8-25, 27-39, 41-74, 75 (*only as to* Doc. 17-6, at 32), 76, 77 (*only as to* Doc. 17-6, at 35), 78-89, 91-93, and 95-103.

### *Evidentiary Hearing*

Petitioner requests an evidentiary hearing to further develop issues of procedural default, factual disputes, legal issues, and claims of actual innocence and equitable tolling. (Doc. 23, at 2). Respondent opposes the motion, arguing Petitioner cannot establish actual innocence and therefore, an evidentiary hearing is not required. (Doc. 28, at 13).

AEDPA limits a federal court's ability to grant an evidentiary hearing:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-

(A) the claim relies on-

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

In *Williams v. Taylor*, the Supreme Court interpreted the opening clause of § 2254(e)(2) to contain its own "diligence" requirement, separate from that of § 2254(e)(2)(A)(ii). 529 U.S. 420, 434-35 (2000). The "failed to develop" clause in § 2254(e)(2) means:

> not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of "failed" is to ensure the prisoner undertakes his own diligent search for evidence. Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.

*Id.* at 435. "Diligence" for purposes of § 2254(e)(2) "will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. If the petitioner fails the diligence requirement of § 2254(e)(2), he is channeled into the strict requirements of subparts (A) and (B). Under those circumstances, a federal court may grant an evidentiary hearing only if the claim relies on "a new rule of constitutional law" or facts "that could not have been previously discovered through the exercise of due diligence"; and "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A) & (B). In Ohio, the sole means of introducing evidence outside the direct appeal record on a constitutional claim is by filing a petition for post-conviction relief under Revised Code § 2953.21.

Here, Petitioner filed for post-conviction relief in a June 4, 1999 Motion to Withdraw Guilty Plea (Ex. 13, Doc. 10); March 17, 2010 Motion for New Sentencing (Ex. 19, Doc. 10); June 24, 2011 Motion to Withdraw Guilty Plea (Ex. 32, Doc. 10); March 7, 2011 Motion to Dismiss the Indictment and for Inspection of the Grand Jury Transcripts (Exs. 34, 35, Doc. 10);

March 21, 2012 Application for reconsideration (Ex. 48, Doc. 10); and April 6, 2012 Motion for delayed appeal from sentencing entry (Ex. 50, Doc. 10).

On April 8, 2011, the Summit County Court of Common Pleas found Petitioner "attached numerous exhibits to his motion to withdraw his plea including affidavits, pleadings, transcripts, reports, letters, pictures, checklists, online docket printouts, and newspaper articles." (Ex. 38, Doc. 10). However, the Ninth District Court of Appeals denied Petitioner's request for an evidentiary hearing, finding "an evidentiary hearing on a post-sentence motion to withdraw a guilty plea is not required if the record indicates that the movant is not entitled to relief and the movant has failed to submit evidentiary documents sufficient to demonstrate manifest injustice." *Id*.

Now, the Court must determine whether holding an evidentiary hearing "could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008) (quoting *Schriro v. Landrigan*, 550 U.S. 465 (2007)). The Court has carefully and extensively reviewed every piece of additional evidence Petitioner seeks to submit and concludes that the evidence does not allege any facts, which if true, would show he was prevented from timely filing a habeas petition. Moreover, review of the record demonstrates that the record was adequately developed in state court and the state court proceeding was not seriously defective. 28 U.S.C. § 2254(d). It follows that Petitioner is not entitled to a hearing to further develop the evidence already submitted to the Court and reviewed by the same. As such, Petitioner's motion for an evidentiary hearing is DENIED.

## MOTION TO DISMISS

Respondent moves to dismiss the Petition as untimely, arguing the Petition was filed nearly thirteen years too late. (Doc. 10, at 15). In response, Petitioner does not deny that his Petition is untimely, but rather, raises a host of equitable tolling arguments to overcome procedural default. (Doc. 16, at 11-34).

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), there is generally a one-year period in which a prisoner in state custody may file a petition for habeas relief in federal court:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under Rule 6(a)(1)(A), the statutory clock starts the day after the triggering event. Fed.R.Civ.P. 6(a)(1)(A). Applied to the case at bar, the triggering event is "the expiration of the time for seeking [direct] review". § 2244(d)(1)(A); *Bronaugh v. Ohio*, 235 F.3d 280, 284-285 (6th Cir. 2000).

Here, Petitioner pled guilty and was sentenced on December 17, 1998, however, that judgment was not entered until December 22, 1998. (Ex. 3, Doc. 10); Ohio App. R. 4(A) ("[a] party shall file the notice of appeal . . . within thirty days of the later of entry of the judgment or order appealed"). Under Ohio App. R. 4(A), Petitioner had 30 days, until January 21, 1999 to appeal, but did not do so. *Marcum v. Lazaroff*, 301 F.3d 480, 481 (6th Cir. 2002). Therefore, his judgment became final when the appellate filing deadline expired (on January 21, 1999). Absent tolling, the statute of limitations expired one year later, on January 21, 2000. *Bronaugh*, 235 F.3d at 284-285; 28 U.S.C. § 2244(d)(1); Fed.R.Civ.P. 6(a).

While the running of the limitations period may be tolled during the pendency of a "properly filed" application for state post-conviction relief or other collateral relief with respect to the pertinent judgment or claims under 28 U.S.C. § 2254 (d)(2), *Artuz v. Bennett*, 531 U.S. 4, 8-9 (2000), this statutory tolling provision does not revive the limitations period, it can only serve to pause a clock that has not yet expired. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004); *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001). Of relevance, a motion to withdraw guilty plea tolls the one-year statute of limitations, though it does not restart it. *Powell v. Warden*, 2012 U.S. Dist. LEXIS 14935, at *12 (S.D. Ohio). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Vroman v. Brigano*, 346 F.3d 598 (6th 2003); *Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003).

Here, Petitioner filed a motion to withdraw guilty plea on June 4, 1999. (Ex. 13, Doc. 10). That motion was denied 40 days later, on July 14, 1999. (Ex. 14, Doc. 10). Petitioner had thirty days to appeal the trial court's ruling, until August 14, 1999. Ohio App. R. 4(A). However, he did not file an appeal until August 18, 1999, and the appeal was denied as untimely. (Exs. 15, 17, Doc. 10). All told, Petitioner's post-conviction motion to withdraw guilty plea extended the

28

statute of limitations 70 days (40 days while the appeal was pending and 30 days to file the appeal). Thus, the AEDPA clock moved forward seventy days, from January 21, 2000 to April 1, 2000. Any motions filed after April 1, 2000 cannot serve to toll the AEDPA limitations period because it had already expired. *Searcy*, 246 F.3d 515; *Vroman*, 346 F.3d 598.

Petitioner did not file the instant Petition until February 5, 2013, nearly thirteen years late. Accordingly, the Court should find the Petition time-barred.

***Equitable Tolling and Actual Innocence***

Equitable tolling allows courts to review time-barred habeas petitions "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). To demonstrate he is entitled to equitable tolling, a habeas petitioner must establish: 1) he has diligently pursued his rights; and 2) "that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 130 S.Ct. at 2562. Such equitable tolling, however, is rare, granted sparingly, and evaluated on a case-by-case basis, with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011); *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004).

One form of equitable tolling recognized by the Sixth Circuit is the claim of "actual innocence". *Souter v. Jones*, 395 F.3d 577, 588-89 (6th Cir. 2005). "Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar or expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). "A federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a

29

factor in determining whether actual innocence has been reliably shown." *McQuiggin*, 133 S.Ct. at 1928.

In determining whether a petitioner has met the requirements for establishing a cognizable claim of actual innocence for purposes of equitable tolling, the Sixth Circuit applies the actual innocence standard developed in *Schlup v. Delo*, 513 U.S. 298 (1995). *Souter*, 395 F.3d at 588-89; *Eberle v. Warden, Mansfield Corr. Inst.*, 532 F. App'x 605, 613 (applying *Schlup* in the context of a guilty plea). The standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the standard unless he persuades the district court that in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *Mc.Cray v. Vasbinder*, 499 F.3d 568, 571-72 (6th Cir. 2007) (quotations omitted); *see also Souter*, 395 F.3d at 602.

"The *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327). The petitioner must present *new evidence* of innocence that is so strong a reviewing court cannot have confidence in the outcome of the trial. *Schlup*, 513 U.S. at 327. New evidence may be "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id*. at 324.

In this case, although Petitioner has presented a substantial amount of evidence concerning the circumstances of his guilty plea, the conduct of attorneys during the entry of his guilty plea and years thereafter, and evidence allegedly showing innocence, Petitioner has not pointed to any extraordinary circumstance that kept him from timely filing his habeas Petition, i.e., from filing by April 1, 2000. Further, Petitioner has not reliably shown actual innocence.

30

Concerning allegations of attorney misconduct, the only evidence submitted which could affect the relevant time period is a September 16, 1999 letter to Mr. Walker requesting his file. (Doc. 17-6, at 34). However, Petitioner did not write to Mr. Walker again until 2009 (Doc. 17-6, at 35), suggesting he did not engage in due diligence to get the Petition timely filed. *See Schlup*, 513 U.S. at 332 ("[T]he court may consider how the timing of the submission and likely credibility of the affiants bear on the probable reliability of that evidence."). Moreover, the evidence does not reliably show Petitioner was coerced into pleading guilty. Rather, Petitioner affirmed to Judge Bond when entering his guilty plea he had no further questions for his attorney, there was nothing his attorney was asked to do but did not, and he was satisfied with the work his attorney had done. (Doc. 17-7, at 30).

As previously discussed, any evidence of an alleged discrepancy between the suspect described in police reports, witness statements, or inmate files and Petitioner's appearance has nothing to do with Petitioner's ability to file a timely Petition and is not evidence that Petitioner has diligently pursued his rights. Furthermore, the evidence is not the type of exculpatory, scientific, or trustworthy evidence to support a claim of actual innocence. *See*, *Lawrence*, 549 U.S. 327; *Schlup*, 513 U.S. 298 at 324, 327. Simply stated, it is not evidence from which the Court can find no reasonable juror would have convicted him. *Schlup*, 513 U.S. at 327.

Similarly, the affidavit of Petitioner's alleged alibi, Thyron Burton, is not the type of exculpatory, reliable evidence needed to show actual innocence. To this end, the affidavit states the following:

1. I do not remember being contacted by Attorney Donald Walker.

2. I was not contacted by Attorney Lawrence Whitney.

3. I was contacted by Jana Deloach about Dante's whereabouts on December 7, 1997.

4. Dante was at my house between the hours of 1 and 3 a.m. on the night of December 7, 1997.

(Doc. 17-2, at 56). The Court finds several issues with the reliability affidavit.

First, the affidavit does not indicate in which year it was signed. Second, the alibi demonstrates unjustifiable delay, because it was ostensibly produced at least after 2004 (when Jana Deloach entered the picture, *see* Doc. 17-2, at 45). Third, it is not clear who Thyron Burton is or how he knew Petitioner, giving rise to questions about the alibi's reliability. Fourth, Petitioner expressly waived the right to introduce the alibi as evidence at trial. (Doc. 17-7, at 27-28). Simply stated, the alibi is not the type of evidence contemplated by *Schlup* to support a claim of actual innocence. 513 U.S. at 327 (Petitioner bears the burden of proving, in light of new reliable evidence, it is more likely than not that no reasonable jury would find him guilty beyond a reasonable doubt).

The undersigned also considered Exhibits 40, 75, and 104, which are the affidavits of Angela Hodges, Lolita Quinn, and Petitioner, but similarly finds they do not show due diligence or actual innocence. To this end, the affidavits of Petitioner and Angela Hodges are dated in 2010 and 2013, respectively. (Doc. 17-3, at 20; Doc. 17-8, at 14). While not dispositive, the timing of the affidavits is evidence of an unjustifiable delay. Moreover, as previously discussed, there is a significant amount of evidence to contradict Petitioner's claim that he did not learn of his appellate rights before the statute of limitations expired. Finally, even accepting as true that the photographs submitted are of Petitioner, the evidence is not sufficiently reliable, dispositive, or new to amount to evidence of actual innocence.

Petitioner also claims his guilty plea was unconstitutional because he was not informed of his right to appeal, and therefore, procedural default is excused (*See, e.g.,* Doc. 16, at 14, 16). However, that argument is not well-taken for several reasons. First, the Ninth District Court of Appeals considered this claim, but found them to be a "crude fabrication" because Petitioner appealed judgments in 1999, 2000, 2010, and 2011. (Ex. 52, Doc. 10). As the Ninth District noted, Petitioner could only appeal the sentence, not the conviction, unless he challenged the constitutionality of the plea in a post-conviction motion. *Id*. Judge Bond informed Petitioner that he had sixth months to file such a post-conviction motion at his plea hearing. (Doc. 17-7, at 32-33). Moreover, Petitioner affirmed he would be giving up certain appellate rights by pleading guilty. (Doc. 17-7, at 29). Because his claim is unsupported by the evidence, Petitioner's argument is not well-taken.

Finally, as previously discussed, evidence including newspaper articles, allegedly "bogus" indictments, police reports, autopsy reports, witness statements, and "Dante Gordon's" criminal history, is not evidence of due diligence or actual innocence. *Schlup*, 513 U.S. at 327.

In sum, the Court liberally construed all of Petitioner's arguments for actual innocence and equitable tolling, as discussed above, and carefully reviewed the entire record and Motion to Expand the Record, but finds Petitioner has not presented evidence to excuse his failure to timely file a Petition. Therefore, the undersigned recommends the Court find Petitioner's procedural default unexcused, and grant Respondent's Motion to Dismiss.

### CONCLUSION AND RECOMMENDATION

Following review, Petitioner's Motion to Expand the Record (Doc. 17) is GRANTED as to Exhibits 2, 3, 7, 26, 40, 75 (*only as to* Doc. 17-6, at 31), 77 (*only as to* Doc. 17-5, at 34), 90, 94, and 104 and DENIED as to Exhibits 1, 4-6, 8-25, 27-39, 41-74, 75 (*only as to* Doc. 17-6, at

32), 76, 77 (*only as to* Doc. 17-6, at 35), 78-89, 91-93, and 95-103. Petitioner's request for an evidentiary hearing (Doc. 23) is DENIED. Further, the undersigned recommends the Court grant Respondent's Motion to Dismiss the Petition as untimely (Doc. 10).

 s/James R. Knepp, II  
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).